UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FARM BUREAU INSURANCE COMPANY OF IDAHO, as subrogee of AMANDA MILLER and TIMOTHY MILLER,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC.; LG ELECTRONICS U.S.A., INC.; and LOWE'S HOME CENTERS, LLC,<br><br>Defendants. | Case No. 4:24-cv-00344-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are two motions for summary judgment: one by Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively LG) (Dkt. 30) and one by Defendant Lowe's Home Centers, LLC (Dkt. 31). The Court heard oral argument on October 29, 2026, and the matter is now ripe for review. For the reasons explained below, the Court will deny LG's motion in its entirety. The Court will partly grant and partly deny Lowe's motion.

## BACKGROUND

This subrogation action arises from a fire that occurred in the home of Tim and Amanda Miller in Shelley, Idaho, on July 3, 2022. Dkt. 30-2 at 2.

At the time of the fire, the Millers had eight dogs in the home, six of whom died as a result of smoke inhalation. *Id.* Two of the dogs were large puppies—so large that they could put their front paws on the countertop to root around for food, a habit known as counter-surfing. *Id.*

### A. May 2022 Fire and Purchase of LG Range

In May 2022, the Millers experienced a separate, much smaller fire in their home. *Id.* at 3. Tim Miller, who had just come home from the grocery store, had placed a bag of medication on the countertop near the stove, a gas model with front-mounted control knobs. *Id.* He stepped out of the kitchen for a moment, and when he returned, he found the bag of medication in flames. *Id.*

The Millers assumed that a counter-surfing dog had inadvertently turned on a burner and started the fire. *Id.* They immediately went to a nearby Lowe's to purchase a new model. *Id.* The Millers explained their situation to a sales associate, and indicated that they were "looking for something that the dogs aren't going to be able to turn on." Dkt. 31-2 at 3.

The Millers requested a particular model with rear-mounted control jobs, but Lowe's did not have it in stock. Id. The sales associate indicated that he had another model that would help: an electronic range manufactured by LG. *Id.* Although the LG range had front-mounted control knobs, the sales associate assured the Millers that it "was going to be really difficult for anybody to bump and turn on because you had to push it in and turn it" to engage the burners. *Id.*

Lowe's sold the LG range to the Millers in a sealed box, and the range remained in that box until the Millers brought it home. *Id.* The box contained an owner's manual, though neither Tim nor Amanda Miller recalls having read it. Dkt. 31-1 at 4.

The owner's manual included the following safety warnings: "Do not store or use flammable material in the oven or near or on the cooktop"; "Do not place or store items that can melt or catch fire on the glass cooktop, even when it is not being used"; and "Never leave food on the cooktop unattended." *Id.* Additionally, it featured instructions for engaging a "lockout" feature that locked the oven door and prevented most oven and cooktop controls from being turned on. *Id.* The Millers maintain that they were unaware of this feature. Dkt. 31-2 at 4.

## B. July 2022 Fire and Aftermath

On July 3, 2022, the Millers and their seven children went to an Independence Day picnic hosted by Amanda's employer. Dkt. 30-2 at 4. The picnic was approximately twenty minutes away. *Id.* The Millers arrived there sometime between 2 p.m. and 3 p.m., having left their dogs at home. *Id.*

The Millers took two vehicles to the picnic: Tim and Amanda rode in one car with some of the children, while the rest of the family rode in another car that was driven by the Millers' eldest son. Dkt. 30-2 at 4.

The family left the picnic late that night, shortly before 11 p.m.. The Miller's eldest son came home first, with Tim and Amanda roughly ten minutes behind him. *Id.* When their son arrived, he found the house in flames and immediately called 911. Dkt. 31-2 at 6. By the time Tim and Amanda got there, firefighters had already extinguished the blaze. Dkt. 30-2 at 4.

Except for two puppies, the Millers' dogs perished from smoke inhalation. *Id.* The Millers assumed that one of the dogs had started the fire by inadvertently turning on the stove and igniting a tinfoil dish of hamburger and other materials left on the cooktop. *Id.* at 5. According to Tim Miller, two of the control knobs were found to have been turned to the "on" position. Dkt. 31-2 at 6.

The next day, Deputy State Fire Marshall Brian Owens investigated the incident and concluded that the fire had been accidental. *See* Dkt. 30-8. As set forth in his report, Deputy Owens deduced that the fire had originated on the cooktop. *Id.* at 3. The report further indicates that the fire was "initiated with combustibles in close proximity to a heat source ignition source." *Id.* Those combustibles included "foodstuffs" and "waste-trash materials." *Id.* at 6. Amanda Miller said she had placed various items on the counter and stove after returning from a trip to the grocery store and had not removed them prior to the picnic. Dkt. 30-2 at 6.

As the report elaborates, Deputy Owens developed a theory that one of the Miller's dogs had tried to get access to items on the stove and inadvertently turned on the burners by jumping against the control knobs. Dkt. 30-8 at 7. He also estimated that the fire had been burning for anywhere from ten minutes to an hour before the firefighters arrived shortly after 11 p.m. Dkt. 30-6 at 7.

Farm Bureau, the Millers' insurance company, paid out approximately $1.2 million to compensate the Millers for damage to their home. Dkt. 1-1 at 8. In July 2024, the company filed this subrogation action in Idaho state court, seeking recovery from LG and Lowe's. *Id.* It alleges design-defect, failure-to-warn, and implied warranty claims against both Defendants, as well as an additional implied warranty claim against Lowe's. *Id.*

LG and Lowes removed the case to this Court on the basis of diversity jurisdiction in August 2024. *See* Dkt. 1. They now move for summary judgment on all claims. *See* Dkts. 30, 31.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. On the other

hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ANALYSIS

### A. LG's Motion for Summary Judgment

LG argues that summary judgment is appropriate here because (1) the Millers misused the range as a matter of law; (2) Farm Bureau cannot prove defect or causation without evidence of the force that the dogs applied to the range's control knobs; and (3) Farm Bureau has failed to exclude reasonable secondary causes. For the reasons explained below, these arguments are unpersuasive.

#### 1. Misuse

First, LG contends that Farm Bureau's design-defect and failure-to-warn claims fail as a matter of law because the Millers misused the range. Dkt. 30-1 at 4. Specifically, LG alleges that the Millers misused the range by leaving a tinfoil container of hamburger on the cooktop while their dogs were left unattended. *Id.* at 6.

Product misuse is an affirmative defense in a products liability action against a manufacturer. *Corbridge v. Clark Equip. Co.*, 730 P.2d 1005, 1006 (Idaho 1986). The manufacturer has no duty to foresee, protect, or warn against product misuse. *Id.* Under Idaho Code § 6-1405(3)(a), "misuse" occurs when "the product user

does not act in a manner that would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstances." Idaho Code § 6-1405(3)(a). The language in § 6-1405(3)(a) ordinarily creates a jury question. *Corbridge*, 730 P.3d at 1006. But where the undisputed facts lead to only one reasonable conclusion, the court may rule as a matter of law. *Id.* at 1007.

In *Corbridge*, the plaintiff was severely injured while operating a front-end loader manufactured by the defendant. *Id.* at 1005. He sued the manufacturer, alleging negligent design. *Id.* The Idaho Supreme Court held that towing the loader through deep snow over a rough railroad crossing with an abrupt incline constituted misuse as a matter of law. *Id.* at 1006.

Here, by contrast, a jury could reasonably find that the Millers used the range in an ordinary manner. Setting food and other items on a cooktop that is turned off is within the scope of what ordinary people do in their kitchens. *See Bender v. Haier US Appliance Sols., Inc.*, No. 5:24-cv-05750-JMG, 2026 WL 852135 at *6 (E.D. Pa. 2026) ("The practice of placing cookware, pans, or other kitchen items on a stovetop is common in household kitchens and plainly foreseeable to a stove manufacturer."). Thus, it cannot be said that the Millers misused the range as a matter of law.

What is more, even though the Millers apparently had notice that their dogs could turn on the old stove, they proactively took steps to remedy the problem by purchasing a different model on the very same day—a model that, based on the assurances of the sales associate, was supposed to be more difficult to activate.

LG maintains that "common knowledge" dictates that a person should not store things on a cooktop. Dkt. 30-1 at 6. But under *Corbridge,* the relevant question is whether the use, or misuse, was reasonably foreseeable. 730 P.2d at 1006. Viewing the evidence in the light most favorable to Farm Bureau, a jury could reasonably find that it was.

LG also asserts that the Millers failed to read the owner's manual, which included instructions on engaging the lockout feature. Dkt. 30-1 at 6. But Farm Bureau's expert, Craig Rice, opines that feature was not automatic, intuitive, or user-friendly. *See* Dkt. 34-2 at 13–14. Thus, whether a reasonably prudent user would have discovered and engaged the feature presents another a jury question.

In sum, LG has failed to show that the Millers misused the range as a matter of law.

### 2. Causation

LG next argues that Farm Bureau has failed to prove the range was defective. Dkt. 30-1 at 7. It alleges not only that the range met relevant industry safety standards, but that Farm Bureau has provided no evidence of causation. *Id.*

To establish a prima facie case in a products liability action, the plaintiff has the burden of proving that (1) he was injured by the product; (2) the injury was the result of a defective or unsafe product; and (3) the defect existed when the product left the control of the manufacturer. *Massey v. Conagra Foods, Inc.*, 328 P.3d 456, 460 (Idaho 2014) (citing *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1310–11 (Idaho 1976)). The term "defect" is not susceptible to a single definition but must be considered on a case by case basis. *Farmer*, 553 P.2d at 1311. The prevailing interpretation of "defective" is that the product does not meet the reasonable expectations of the ordinary consumer as to safety. *Id.*

A defect can be shown either by direct evidence or by circumstantial evidence. *Massey*, 328 P.3d at 460. A showing of circumstantial evidence requires proof of: (1) the malfunction of the product; (2) the lack of evidence of abnormal use; and (3) proof excluding the possibility of other reasonable causes." *Id.* (citing *Doty v. Bishara*, 848 P.2d 387, 390 (Idaho 1992)). When circumstantial evidence is presented, the trier of fact is "invited to infer the existence of a defect." *Id.*

(quoting *Edwards v. Conchemco, Inc.*, 727 P.2d 1279, 1280 (Idaho Ct. App. 1986)). The defect may be established solely based on the testimony of the user or operator of the product as to the circumstances of the event. *Id.* (citing *Farmer*, 553 P.2d at 1312).

The thrust of Farm Bureau's design-defect claims is that the range's control knobs protruded farther than any other portion of the front of the range and required only minimal force to ignite the burners. Dkt. 1-1 at 8. According to Farm Bureau's expert, Mr. Rice, the burners could be activated by a "linear motion" rather than the push-and-twist motion required under the relevant industry standard. Dkt. 34-2 at 16. In addition, Mr. Rice asserts that the knobs lacked adequate protection from accidental contact. *Id.* at 17.

Meanwhile, LG's expert, James Dydo, contends that the range met "all applicable standards of use." Dkt. 31-1 at 8. Specifically, Mr. Dydo asserts that the range's knobs met the push-and-turn standard, and that the load required to activate the burners was met and exceeded. *Id.*

Although compliance with industry standards is relevant to a products liability action, it is not dispositive. *See Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 863 (9th Cir. 2011) ("Compliance with applicable safety standards does not insulate a manufacturer from defective product claims."). What is more, where

qualified experts disagree on a material point, "it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

With respect to causation, LG argues that Farm Bureau failed to provide evidence of the force that the Millers' dogs allegedly applied to the control knobs. Dkt. 30-1 at 8. It asserts that a large dog rooting around for food likely applied "maximal" force, so any defect in the force required to activate the range would not have mattered. *Id.* at 9.

This argument ignores the crux of Farm Bureau's design-defect theory, which is not merely that the knobs required too little force but that they could be activated by a single linear push. It also misapprehends what Farm Bureau must show. In a design-defect action, circumstantial evidence and reasonable inferences may establish causation. *Massey*, 328 P.3d at 460 (citing *Edwards*, 727 P.2d at 1280). Further, "the defect may be established solely based on the testimony of the user or operator of the product as to the circumstances of the event." *Id.* (quoting *Farmer*, 553 P.2d at 1280) (internal quotation marks omitted).

Here, a jury could reasonably infer that a large dog placing its paws on the front of the range could inadvertently activate the burners. Summary judgment based on LG's causation argument is therefore inappropriate.

### 3. Reasonable Secondary Causes

Finally, LG argues that Farm Bureau has failed to account for reasonable secondary causes. Dkt. 30-1 at 10. It alleges that the Millers' children could have turned on the range when they returned from the picnic, thereby eliminating LG's liability for the fire. *Id.* at 12.

To be sure, a plaintiff in a products liability action must not only show that the product was defective and unreasonably dangerous, but that there is an absence of evidence of reasonable secondary causes that would eliminate the defendant's liability. *Corbridge*, 730 P.2d at 1007. The plaintiff need not exclude every possible cause, though—only "reasonably likely" ones. *Farmer*, 553 P.2d at 1313. A possible cause "based only on speculation" is not a reasonably likely cause. *Glenn v. B & R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1069 (D. Idaho 2018).

Here, LG has provided no evidence that any of the Miller's children used the range in the hours leading up to the fire. Indeed, the first person to arrive at the home was the Millers' eldest son, who found the kitchen engulfed in flames and immediately called 911. This makes LG's alternative theory exceedingly implausible.

At the same time, the record features considerable evidence supporting Farm Bureau's causation theory. Deputy Owens estimated that the fire started roughly

between 10:30 p.m. and 11 p.m., at a time when no person is known to have been present in the home. What is more, two of the dogs were known counter-surfers, and both Deputy Owens and Mr. Rice theorized that one of the dogs inadvertently turned on a burner.

For these reasons, a jury could reasonably infer that one of the Miller's dogs activated the range. LG's alternative theory, by contrast, is not reasonably likely.

**4. Implied Warranty Claim**

Farm Bureau also brings an implied warranty claim against LG. It alleges that LG breached the implied warranty of merchantability by selling a stove that contained a dangerous defect. Dkt. 1-1 at 15.

The Court will address Farm Bureau's implied warranty claims in greater detail below. It will note, however, that LG's motion for summary judgment says very little about the implied warranty of merchantability. Dkt. 30-1. To the extent that LG challenges this claim it all, it does so by way of its design-defect and causation arguments, which this Court has already rejected.

Accordingly, the Court will deny LG's motion for summary judgment in its entirety.

**B. Lowe's Motion for Summary Judgment**

Like LG, Lowe's argues that Farm Bureau cannot prove causation or the absence of reasonable secondary causes, and that the Millers' comparative fault bars recovery as a matter of law. Lowe's also asserts that the Idaho Products Liability Reform Act (IPLRA), Idaho Code §§ 6-1401 to 6-1410, shields Lowe's from liability for the design-defect and failure-to-warn claims.

**1. Idaho Product Liability Reform Act**

Lowe's causation, secondary-cause, and comparative-fault arguments overlap substantially with LG's, and they fail for similar reasons. At the same time, Lowe's is correct that the IPLRA shields it from liability for Farm Bureau's design-defect and failure-to-warn claims.

The IPLRA provides in relevant part that:

> [i]n the absence of express warranties to the contrary, *sellers other than manufacturers* shall not be subject to liability in circumstances where they do not have a reasonable opportunity to inspect the product in a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition which is in issue; or *where the product seller acquires the product in a*

> *sealed package or container and sells the product in the same sealed package or container.*

Idaho Code § 6-1407 (emphasis added).

Here, it is undisputed that Lowe's received the range in a sealed box and sold it to the Millers in the same sealed box. The IPLRA thus protects Lowe's from liability for Farm Bureau's design-defect and failure-to-warn claims, and the Court will grant Lowe's motion for summary judgment on those claims only.

**2. Implied Warranty Claims**

The Idaho Product Liability Reform Act does not shield Lowe's from liability for Farm Bureau's implied warranty claims.

Farm Bureau alleges that Lowe's breached two implied warranties: an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Dkt. 1-1 at 13–14. Specifically, Farm Bureau asserts that Lowe's breached an implied warranty of merchantability by selling a stove that contained a dangerous design defect. *Id.* at 14–15. It also alleges that Lowe's breached an implied warranty of fitness for a particular purpose by selling a stove that could be activated inadvertently after the Millers had communicated their circumstances to the sales associate. *Id.* at 13.

Idaho Code § 28-2-314 provides that, unless excluded or modified, a warranty of merchantability is implied in any sale of goods if the seller is a merchant in that kind of goods. *Dickerson v. Mountain View Equip. Co.*, 710 P.2d 621, 624 (Idaho Ct. App. 1985) (citing Idaho Code § 28-2-314). An implied warranty of merchantability does not arise from any agreement between the parties, but is imposed by operation of law. *Id.* Merchantable goods must at least be such as "pass without objection in the trade under the contract description" and "are fit for the ordinary purposes for which such goods are used." Idaho Code § 28-2-314.

Meanwhile, Idaho Code § 28-2-315 establishes that, unless excluded or modified, a warranty that goods will be fit for a buyer's particular purpose is implied in any sale where the seller had reason to know of the buyer's particular purpose and the buyer relies on the seller's skill or judgment to select or furnish suitable goods. *Good v. Harry's Dairy, LLC*, 461 P.3d 765, 770 (Idaho 2020) (citing Idaho Code § 28-2-315).

To the extent that Lowe's grapples with Farm Bureau's implied warranty claims, it argues that those claims must fail alongside Farm Bureau's design-defect claims because "[the implied warranty claims] rely on the contention that Lowe's sold the Millers a stove that contained a design defect." Dkt. 31-1 at 13 (internal

quotation marks omitted). It stakes its argument on *Carmen v. Breville USA, Inc.*, No. 1:15-cv-00117-EJL-CWD, 2018 WL 4512191 (D. Idaho 2018), a products liability case where this Court ruled that the plaintiff's failure to establish a defect was dispositive of his parallel warranty claims. *Id.* at *6–7.

But *Carmen* is distinguishable insofar the plaintiff in that case failed to present any evidence of a product defect. *Id.* at *5. Farm Bureau, by contrast, has identified specific defects and linked them to the fire through circumstantial evidence. Farm Bureau has also presented evidence that the Millers relied upon the skill or judgment of Lowe's sales associate to select a stove that was suitable to their particular needs.

In sum, Lowe's has failed to show that Farm Bureau's implied warranty claims fail as a matter of law. Accordingly, summary judgment on those claims will be denied.

## CONCLUSION

Although the Court can resolve some claims at this stage, triable issues of fact remain. Therefore, Lowe's motion for summary judgment must be granted in part and denied in part, while LG's motion for summary judgment must be denied in full.

## ORDER

**IT IS ORDERED that:**

1. Defendant LG's Motion for Summary Judgment (Dkt. 30) is DENIED in its entirety.

2. Defendant Lowe's Motion for Summary Judgment (Dkt. 31) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Counts One, Two, Three, and Four. The motion is DENIED as to Counts Five and Six.

DATED: November 12, 2026

B. Lynn Winmill
U.S. District Court Judge